UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


MARITZA REYES,

       Plaintiff,

v.                             Case No. 2:19-cv-866-FtM-66NPM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____

## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review of a denial of Social Security disability insurance benefits. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 26). As discussed in this report, the decision of the Commissioner should be affirmed.

## I.    Eligibility for Disability Benefits and the ALJ's Decision

### A.    Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be

---

[1] Cited as "Tr." followed by the appropriate page number.

expected to result in death, or that has lasted or can be expected to last for a continuous period of not less than twelve months.[2] The impairment must be severe, making the claimant unable to do previous work or any other substantial gainful activity that exists in the national economy.[3]

### B.  Factual and Procedural History

Plaintiff was born in January 1963, has at least a high school education, and previously derived income by working as an office clerk or collecting scrap metal. (Tr. 23-24). Prior to the application for benefits giving rise to the matter currently before the court, Plaintiff applied for disability benefits and supplemental security income in 2012, claiming she was unable to work due to disabling conditions beginning August 1, 2011. These claims for benefits were administratively denied initially on August 16, 2012, and upon reconsideration on September 17, 2012. Plaintiff requested a hearing, and Administrative Law Judge Haaversen issued a decision on June 22, 2015, finding Plaintiff not disabled. On November 16, 2016, the administration's Appeals Council likewise found Plaintiff not disabled through June 22, 2015. Plaintiff pursued judicial review, and on February 2, 2018, this court affirmed the administration's decision. (Doc. 26, p. 1).

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

On March 26, 2018, Plaintiff applied once again for disability insurance benefits and supplemental security income, claiming she was unable to work due to disabling conditions beginning July 1, 2011 (a purported onset date one month *earlier* than previously alleged). On June 28, 2018, Plaintiff's claim for supplemental security income was granted with an onset date of March 26, 2018 (the date of the application). (Tr. 260, 278, 366-376, 377-384). But Plaintiff's insurance for disability income was only effective through December 31, 2016, and the administration denied her application for disability insurance benefits initially on June 28, 2018, and upon reconsideration on October 3, 2018. (Tr. 262, 278).

At Plaintiff's request, Administrative Law Judge Ryan Johannes ("ALJ") held a hearing on June 20, 2019, concerning the denial of disability benefits. (Tr. 148-174). As a preliminary matter, the ALJ concluded that the agency's previous finding of no disability through June 22, 2015 constituted res judicata. (Tr. 15). The ALJ then addressed the period of June 23, 2015 through the date last insured (December 31, 2016) and issued a decision finding Plaintiff not disabled. (Tr. 15-25).

On October 16, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 4-7). Subsequently, on November 20, 2019, the Appeals Council denied Plaintiff's request to reopen the prior decision. (Tr. 2-3). Plaintiff then filed a Complaint (Doc. 1) with this Court on December 5, 2019, and the case is ripe for review.

## C.    The ALJ's Decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277 (11th Cir. 2020) (citing 20 C.F.R. § 416.920(a)(1)). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether, in light of his age, education, and work experience, the claimant can perform other work that exists in "significant numbers in the national economy."

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x. 931, 933 (11th Cir. 2015) (citing 20 C.F.R. §§ 416.920(a)(4), (c)–(g), 416.960(c)(2); *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400. Unlike judicial proceedings, SSA hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111, (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage,

4

the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *Id*. at 1359; *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant."); 20 C.F.R. § 404.1512 (providing that the claimant must prove disability).

In this matter, the ALJ found Plaintiff had satisfied the insured status requirements through December 31, 2016. At step one of the evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since the prior decision (June 22, 2015) and through the date last insured (December 31, 2016). At step two,

the ALJ characterized Plaintiff's severe impairments as: "lumbar degenerative disc disease, status-post right shoulder rotator cuff repair, status-post thoracic spine compression, osteoarthritis, depressive disorder, and obesity." At step three, the ALJ determined that during the relevant time period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 17-18).

As the predicate to step four, the ALJ arrived at the following RFC:

> After careful consideration of the entire record, the undersigned finds that, since the prior decision and through the date last insured, the claimant had the residual functional capacity to perform less than the full range of light work as defined in 20 [C.F.R. §] 404.1567(b) such that the claimant could frequently balance and never climb ladders and scaffolds. Claimant must have avoided concentrated exposure to extreme cold and heat. Claimant could only occasionally be exposed to moving mechanical parts. Claimant was limited to understanding, remembering, and carrying out simple repetitive tasks and making simple work related decisions. Claimant could have had only occasional exposure to the general public and coworkers. Claimant was limited to a routine work setting that has only occasional changes in the work routine.

(Tr. 19). The ALJ then construed Plaintiff's previous self-employment as a recycler and scrap-metal collector as corresponding with the occupation of salvage laborer, DOT 929.687-022, and found Plaintiff able to perform this past relevant work, which

is generally performed at the medium exertional level and has an SVP of $2^4$ but was performed by Plaintiff at the light exertional level. (Tr. 23-24).

Alternatively, at step five, the ALJ found Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. 24-25). In support, a vocational expert identified three representative occupations an individual with Plaintiff's age, education, work experience, and RFC could perform:

(1) Silver Wrapper, DOT 318.687-018, light, SVP 1;

(2) Price Marker, DOT 209.587-034, light, SVP 2; and,

(3) Routing Clerk, DOT 222.687-022, light, SVP 1.[5]

Relying on the vocational expert's opinion, the ALJ found Plaintiff not disabled during the relevant period of time. (Tr. 25).

## II.   Analysis

Plaintiff's appeal presents the following issues:

(1)   Whether the ALJ improperly found the opinion of consultative examiner Dr. Chang unpersuasive. (Doc. 26, pp. 37-41).

---

[4] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work, in a purely physical sense, that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled and skilled, with the "SVP" (Specific Vocational Preparation) providing further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled, SVP 3 and 4 are semiskilled, and SVP 5 through 9 are skilled.

[5] As discussed later in this report, the occupation of routing clerk has an SVP of 2.

(2)     Whether the ALJ erred by failing to find Plaintiff limited to handling and fingering occasionally. (*Id.*, pp. 42-43).

(3)     Whether the ALJ improperly found Plaintiff had past relevant work as a salvage laborer. (*Id.*, pp. 16-21).

(4)     Whether the ALJ improperly found Plaintiff could perform her past relevant work as a salvage laborer. (*Id.*, pp. 21-26).

(5)     Whether the ALJ (i) failed to resolve any apparent conflict between the RFC's limitations and the DOT's description of the representative jobs as requiring Level 2 reasoning; (ii) failed to resolve any apparent conflict between the RFC's limitations and non-DOT suggestions that the jobs of marker and routing clerk required more than occasional exposure to the general public and co-workers; and (iii) improperly relied on the vocational expert's testimony about the number of silver-wrapper jobs available in the national economy. (*Id.*, pp. 26-37).

## A.     Standard of Review

While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the agency's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers

to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that "the evidence preponderates against" the agency's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).

### B.   Whether the ALJ Properly Considered Dr. Chang's Opinion

Plaintiff argues the ALJ did not give proper weight to the opinions of Dr. Chang, who performed a one-time consultative examination of Plaintiff essentially eighteen months after her date last insured. (Tr. 17, 696-701). But Plaintiff's point of error should be rejected because, for disability cases filed after March 27, 2017, such as this one, an ALJ does not defer or give any specific evidentiary weight to a medical opinion. 20 C.F.R. § 404.1520c(a). Instead, an ALJ assesses the persuasiveness of a medical source's opinions in light of the following five factors, with the first two being the most important: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length, frequency, and purpose of the examining and any treatment relationship; (4) specialization; and (5) other factors, such as the source's familiarity with other evidence concerning the claim, that tend to support or contradict the medical opinion. 20 C.F.R. § 404.1520c(b) and (c).

9

Citing and applying this applicable standard, the ALJ noted that Dr. Chang's opinions are the result of a consult that took place well after the relevant time period. (Tr. 19, 23). "To be eligible for disability insurance benefits, a claimant must establish that she was under disability on or before the last date for which she was insured." *Whitton v. Comm'r, Soc. Sec. Admin.*, 643 F. App'x 842, 844 (11th Cir. 2016) (citing 42 U.S.C. § 423(a)(1)(A), (c)(1); *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005)). Because Plaintiff's date last insured was December 31, 2016, Plaintiff must show that she was disabled on or before that date. While Dr. Chang's examination note refers to medical records that, in turn, incorporate information generated prior to the date last insured, Plaintiff does not demonstrate that Dr. Chang's opinions speak exclusively—or to any other degree—to that period of time. For this reason alone, the ALJ did not err in finding Dr. Chang's evaluation unpersuasive.

As a one-time examiner, Dr. Chang had no treatment relationship with Plaintiff. (Tr. 696). And the ALJ correctly noted that Dr. Chang did not provide any opinions about what Plaintiff could or could not do in a work setting. Instead, Dr. Chang merely recommended further assessment and intervention, and opined that Plaintiff would benefit from assistance in managing her finances. (Tr. 701). To the extent that Dr. Chang's opinion could be read as related to the relevant period and

indicative of an inability to work, the ALJ reasoned that Dr. Chang's opinion would be inconsistent with "clinical observations from during the relevant period." (Tr. 23). Specifically, the ALJ noted that several mental status examinations from during the relevant period were generally unremarkable and showed Plaintiff had "normal insight, judgment, thoughts, speech, psychomotor activity, and a euthymic [that is, normal or tranquil] mood and affect;" that she slept well and had good energy; and that she was able to function well on her medication regimen. (Tr. 20-21). Thus, the ALJ's finding of Dr. Chang's opinion as "not persuasive" is supported by substantial evidence.

### C.     Whether the ALJ Erred by Not Including a Handling and Fingering Limitation in the RFC

"An individual's RFC is [her] ability to do physical and mental work activities on a sustained basis despite limitations secondary to [her] established impairments. *Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1364 (M.D. Fla. 2009); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("The residual functional capacity is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments."). So, a Plaintiff must not only show that an impairment exists, but the extent to which an impairment limits her ability to work. *Preston v. Comm'r, Soc. Sec. Admin.*, 748 F. App'x 268, 270 n.6 (11th Cir. 2018) (citing *Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir. 2005)). In determining a plaintiff's RFC, the ALJ must consider all relevant evidence

of record. *Barrio v. Comm'r of Soc. Sec.*, 394 F. App'x 635, 637 (11th Cir. 2010).

But ultimately, "the claimant bears the burden of proving that [she] is disabled, and

consequently, [she] is responsible for producing evidence in support of [her] claim."

*Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003).

Citing various doctors' notes that assess osteoarthritis of multiple joints (Doc.

26, p. 42), Plaintiff contends the RFC should have included a limitation to occasional

handling and fingering. But none of these notes specifically mention the hands or

fingers or any functional limitations associated with them. (Tr. 701, 733, 744, 770).

Plaintiff also cites non-examining physician Frederick Lutz M.D.'s June 21, 2018

evaluation, which opines that Plaintiff is limited to occasional handling and fingering

with her right hand. (Doc. 26, p 42). But Dr. Lutz conducted his review nearly a year

and a half after Plaintiff's date last insured. (Tr. 255). As discussed above, Plaintiff

must show she was disabled on or before her date last insured, and Dr. Lutz's report

does not indicate that it relates to the relevant period. The ALJ's omission of any

limitation to occasional handling and fingering is consistent with the overall record.

**D.     Whether the ALJ Improperly Found Plaintiff Had Past Relevant
         Work as a Salvage Laborer**

Plaintiff challenges the ALJ's determination that her self-employment as a

recycler or scrap-metal collector constituted past relevant work as defined in the

administration's regulations. On this score, the ALJ neither cited any authority nor

provided any analysis. Instead, the ALJ offered nothing more than the conclusory

observation: "This work meets the earning, recency, and duration requirements to qualify as past relevant work." (Tr. 23-24).

The regulations inform claimants that: "Past relevant work is work you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." 20 C.F.R. § 416.960(b)(1). To determine whether labor constitutes substantial gainful activity, the agency evaluates self-employment differently from other forms of employment and "considers the nature of the activities and their value to the business in relation to the actual income." *Johnson v. Sullivan*, 929 F.2d 596, 597–598 (11th Cir. 1991).

The regulations provide:

> We will consider your activities and their value to your business to decide whether you have engaged in substantial gainful activity if you are self-employed. We will not consider your income alone because the amount of income you actually receive may depend on a number of different factors, such as capital investment and profit-sharing agreements. We will generally consider work that you were forced to stop or reduce to below substantial gainful activity after 6 months or less because of your impairment as an unsuccessful work attempt. See paragraph (d) of this section. We will evaluate your work activity based on the value of your services to the business regardless of whether you receive an immediate income for your services. We determine whether you have engaged in substantial gainful activity by applying three tests. If you have not engaged in substantial gainful activity under test one, then we will consider tests two and three. The tests are as follows:
>
> > (i) Test one: You have engaged in substantial gainful activity if you render services that are significant to the operation of the business and receive a substantial income from the business. Paragraphs (b) and (c) of this section

13

> explain what we mean by significant services and substantial income for purposes of this test.
>
> (ii) Test Two: You have engaged in substantial gainful activity if your work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of unimpaired individuals in your community who are in the same or similar businesses as their means of livelihood.
>
> (iii) Test Three: You have engaged in substantial gainful activity if your work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work you are doing.

20 C.F.R. § 404.1575(a)(2). But here, the ALJ did not cite or discuss any of the tests set forth in the regulations for whether self-employment activity should constitute past relevant work. (Tr. 23-24). With no apparent application of 20 C.F.R. § 404.1575(a)(2) by the ALJ, the Court is left guessing as to how the ALJ arrived at his conclusion that Plaintiff's past work as a recycler or scrap-metal collector amounted to substantial gainful activity and met the standard for past relevant work.

Thus, the Court cannot conclude that the ALJ's past-relevant-work finding flows from the correct use of the applicable legal standard. *See Alzamora v. Comm'r of Soc. Sec.*, No. 6:18-cv-618-ORL-41TBS, 2019 WL 3044032, *6 (M.D. Fla. Apr. 26, 2019), *report and recommendation adopted*, No. 6:18-cv-618-ORL-41TBS, 2019 WL 3037789 (M.D. Fla. July 11, 2019). This moots the question whether Plaintiff could have engaged in her prior activity as a recycler or scrap-metal

14

collector during the relevant period. But the ALJ's past-relevant-work error at step four does not, alone, warrant remand because the ALJ also found, in the alternative, that Plaintiff could find other work in the national economy.

### E.     Whether the ALJ Improperly Found Plaintiff Could Perform Other Jobs

Plaintiff advances a three-pronged attack against the ALJ's conclusion that there was other work adequately available in the economy that Plaintiff could perform. (Doc. 26, p. 26). First, Plaintiff claims the ALJ failed to resolve an apparent conflict between the vocational expert's opinion that three representative jobs were consistent with Plaintiff's RFC, and the DOT's descriptions of those occupations as requiring "Level 2" reasoning. Second, Plaintiff argues the ALJ also failed to resolve a conflict between the RFC and the jobs of price marker and routing clerk allegedly requiring more than "occasional exposure to the general public and coworkers." And third, Plaintiff claims there was an insufficient number of silver-wrapper jobs in the national economy. The Court addresses each argument in turn.

*Any Conflict Between the RFC and the DOT*

With respect to any conflict at step five between limitations in an RFC and job requirements as listed in the DOT, "the ALJ has an affirmative obligation to identify any 'apparent' conflict and to resolve it. The failure to properly discharge this duty means the ALJ's decision is not supported by substantial evidence." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018) (quoting

15

SSR 00-4p, 2000 WL 1898704)). An ALJ must ask the vocational expert to identify and explain any conflict between his or her testimony and the DOT. *Id.* at 1363. Moreover, "[d]uring or after the hearing, the ALJ is expected to take notice of apparent conflicts, even when they are not identified by a party, and resolve them." *Id.* at 1363.

Here, the vocational expert opined that the jobs of silver wrapper, price marker, and routing clerk were consistent with the RFC's limitation "to understanding, remembering, and carrying out simple repetitive tasks and making simple work related decisions." (Tr. 24-25, 169-170). Plaintiff posits this opinion conflicts with the DOT's classification of these jobs as involving "Level 2" reasoning and argues the ALJ improperly left this conflict unresolved. (Doc. 26, p. 27)

As stated in the DOT descriptions for each of the representative jobs, Level 2 reasoning means the employee will: "Apply commonsense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." *See*, *e.g.*, DICOT 318.687-018 (silver wrapper), 1991 WL 672757. One such example is the DOT's concise description of the tasks associated with the occupation of silver wrapper:

> Spreads silverware on absorbent cloth to remove moisture.
> Wraps individual place settings in napkins or inserts them with

> prescribed accessory condiments in plastic bag and closes bag with electric sealer. May immerse silverware in cleaning solution to remove soap stains before wrapping. May place tarnished and bent eating utensils aside.

*Id*. On its face, this occupational summary is entirely consistent with the RFC limitation of "carrying out simple repetitive tasks and making simple work related decisions."[6] Indeed, the DOT classifies the job of silver wrapper as SVP 1, which means all a typical employee would need "to learn the techniques, acquire the information, and develop the facility needed for average performance" is nothing more than a "[s]hort demonstration." DICOT Appendix C (Components of the Definition Trailer), 1991 WL 688702.

The other representative occupations of routing clerk and marker (also known as ticket printer or tagger) are classified as SVP 2.[7] *See* DICOT 222.687-022

---

[6] And the same can be said for the DOT's task summaries for the representative occupations of routing clerk and marker. *See* DICOT 222.687-022 (routing clerk), 1991 WL 672133 ("Sorts bundles, boxes, or lots of articles for delivery: Reads delivery or route numbers marked on articles or delivery slips, or determines locations of addresses indicated on delivery slips, using charts. Places or stacks articles in bins designated according to route, driver, or type. May be designated according to work station as Conveyor Belt Package Sorter (retail trade). May sort sacks of mail and be known as Mail Sorter (r.r. trans.)."); DICOT 209.587-034 (marker), 1991 WL 671802 ("Marks and attaches price tickets to articles of merchandise to record price and identifying information: Marks selling price by hand on boxes containing merchandise, or on price tickets. Ties, glues, sews, or staples price ticket to each article. Presses lever or plunger of mechanism that pins, pastes, ties, or staples ticket to article. May record number and types of articles marked and pack them in boxes. May compare printed price tickets with entries on purchase order to verify accuracy and notify supervisor of discrepancies. May print information on tickets, using ticket-printing machine.").

[7] An SVP 2 indicates that a job requires, at a maximum, one month of time to learn the techniques, acquire the information, and develop the facility needed for average performance. DICOT Appendix C (Components of the Definition Trailer), 1991 WL 688702.

17

(routing clerk), 1991 WL 672133; DICOT 209.587-034 (marker), 1991 WL 671802. An SVP of 1 or 2 corresponds to the regulatory definition of unskilled work. *See* SSR 00-4p, 2000 WL 1898704, at *3. Unskilled work requires "little or no judgment to do simple duties." 20 C.F.R. § 404.1568(a). And so, contrary to Plaintiff's argument, "courts have concluded that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks, as long as those jobs have a specific vocational preparation ("SVP") time of 2." *Pierce v. Comm'r of Soc. Sec.*, No. 8:18-CV-3114-T-JSS, 2020 WL 995850, *5 (M.D. Fla. Mar. 2, 2020) (internal quotation omitted) (citing *Chambers v. Comm'r of Soc. Sec.*, 662 F. App'x 869, 873 (11th Cir. 2016); *Miller v. Comm'r of Soc. Sec.*, 246 F. App'x 660, 661–62 (11th Cir. 2007); *Hobbs v. Colvin*, No. 8:13-cv-3233-T-24 MAP, 2015 WL 628763, *5 (M.D. Fla. Feb. 12, 2015); *Gray v. Colvin*, No. 3:12-cv-506/EMT, 2014 WL 1118105, *8 (N.D. Fla. Mar. 20, 2014); *Hurtado v. Astrue*, No. 09-60930-CIV, 2010 WL 1850261, *12 (S.D. Fla. Apr. 14, 2010)).

Regardless of the SVP, the Eleventh Circuit has also recently held that "no apparent conflict exists between a reasoning level of 2 and a limitation to a 'simple' task." *Fletcher v. Saul*, No. 8:19-cv-1476-T-23AAS, 2020 WL 4188210, *1 (M.D. Fla. July 21, 2020) (citing *Valdez v. Comm'r of Soc. Sec.*, 808 F. App'x 1005, 1009 (11th Cir. 2020)); *see also Lawrence v. Saul*, 941 F.3d 140, 144 n.8 (4th Cir. 2019) (joining "every other circuit to consider the issue" and finding no apparent conflict

between "simple, routine, repetitive" and Level 2 reasoning). As the Fourth Circuit reasoned in *Lawrence*, detailed instructions are "less correlated with complexity than with length"; "there is no conflict between 'simple' and 'uninvolved' instructions, as both connote instructions that are 'not complicated or intricate'"; and "'routine' and 'repetitive' tasks may involve a few variables." 941 F.3d at 143. Accordingly, there was no conflict between the RFC and the Level 2 reasoning classification of the representative jobs for the ALJ to resolve.

*Occasional Exposure to the General Public and Coworkers*

Pointing to portions of job-description compilations [8] that incorporate information from sources *other than the DOT*, Plaintiff argues the ALJ failed to resolve an apparent conflict between the RFC's limitation to "occasional exposure to the general public and coworkers" and suggestions from non-DOT sources that the positions of marker and routing clerk require more. But Plaintiff cites no authority for the proposition that an ALJ must identify and resolve apparent conflicts between an expert's opinion that certain jobs are representative of sufficiently available work that a claimant can still perform, and non-DOT descriptions of those jobs.

---

[8] The compilations of job descriptions are apparently from a program or subscription called "Job Browser Pro – by SkillTRAN," which appears to incorporate some, but not all, of the DOT description for a given occupation as well as descriptions from other sources. (Docs. 26-2 to 26-4).

Moreover, with respect to this limitation, there is no conflict with the DOT. As explained in Appendix B to the DOT, the DOT's job descriptions identify the highest functions in each occupation concerning a worker's need to interact with "Data, People, and Things." DICOT Appendix B (Explanation of Data, People, and Things), 1991 WL 688701. For interacting with people, the DOT uses an eight-level list with "mentoring" being the highest functional classification and "taking instructions-helping" being the lowest. *Id*. The "taking instructions-helping" category is defined as:

> Attending to the work assignment instructions or orders of supervisor. (No immediate response required unless clarification of instructions or orders is needed.) Helping applies to "non-learning"' helpers.

*Id*. And the DOT describes both marker and routing clerk as requiring an insignificant amount of this lowest level of interaction with people. *See* DICOT 222.687-022 (routing clerk), 1991 WL 672133; DICOT 209.587-034 (marker), 1991 WL 671802. Moreover, for both the routing clerk and marker positions, the DOT describes "talking" and "hearing" as "not present – activity or condition does not exist." *Id*. (brackets denoting lower-case alterations omitted). The DOT's descriptions of these jobs therefore comport with Plaintiff's RFC limitation to "occasional exposure to the general public and coworkers." *Cf. Pierce v. Saul*, No. 8:18-cv-1681-T-AEP, 2019 WL 4439867, *4 (M.D. Fla. Sept. 17, 2019) (reasoning that a DOT description of a job as requiring occasional talking and hearing and an

20

insignificant amount of "speaking and signaling," which is two levels higher on the interacting-with-people scale than "taking instructions-helping," comports with an "RFC limitation for only occasional contact with supervisors and coworkers and no contact with the general public"). There was no apparent conflict for the ALJ to resolve.

*Number of Silver-Wrapper Jobs*

If the Commissioner finds there are jobs in the national economy a plaintiff can perform, then the Commissioner must show these jobs exist in the national economy in significant numbers either in the region where the plaintiff lives or in several other regions in the country. *Webster v. Comm'r of Soc. Sec.*, 773 F. App'x 553, 555 (11th Cir. 2019) (citing 20 C.F.R. § 404.1566(a)). "The ALJ, relying on the VE's testimony, determines whether a specific number of jobs constitutes a significant number." *Id.* (citing *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). And "a vocational expert's testimony may count as substantial evidence even when unaccompanied by supporting data." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1155 (2019).

Here, the ALJ relied on the vocational expert's testimony that a significant number of jobs existed in the national economy, specifically 107,000 silver-wrapper jobs. (Tr. 24-25). Even if 66% of those jobs were part-time as Plaintiff contends, the remaining number of full-time silver-wrapper jobs (36,380) satisfied step five's

numerosity requirement. *See Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 935 (11th Cir. 2015) (finding 23,800 jobs in the national economy sufficient); *Brooks v. Barnhart*, 133 F. App'x 669, 671 (11th Cir. 2005) (finding 840 jobs in the national economy sufficient).

## III.  Conclusion

Upon consideration of the submissions of the parties and the administrative record, it appears the ALJ failed to adequately demonstrate proper use of the applicable legal standard when concluding that Plaintiff had past relevant work. But any error in this regard is harmless because the ALJ's conclusion that Plaintiff was not disabled—because she could have performed other sufficiently available work— reflects the proper use of the correct legal standards and is supported by substantial evidence.

It is **RESPECTFULLY RECOMMENDED** the decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in Defendant's favor.

Reported in Chambers in Fort Myers, Florida on February 16, 2021.

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**